

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SSC ACQUISITION CORP. d/b/a          CIVIL ACTION NO.
SCIENTIFIC CORPORATION                04-CV-421

VERSUS                                JUDGE BRADY

DAVID R. RATCLIFF, ANTHONY W. COLLIER,
and SAFE AIR TECHNOLOGY, LLC

## RULING

This matter is before the court on a Motion by Plaintiff SSC Acquisition Corp.[1] to enforce its Settlement Agreement[2] with Defendants David R. Ratcliff, Anthony W. Collier, and Safe Air Technology.[3] Defendants filed a Memorandum in Opposition;[4] Plaintiff has submitted a Reply Memorandum.[5] Defendants also submitted a Motion[6] to Interpret the Agreement, to which Plaintiff filed a Response,[7] and Defendants submitted a Reply Memorandum.[8] There is no need for oral argument. This court retained jurisdiction over the underlying disputes for the limited purpose of

---

[1] Doing business as Scientific Systems Corporation ("SSC"). Hereinafter "Plaintiff."

[2] Doc. 130, Exhibit 1. Hereinafter "Agreement." The Agreement is composed of articles; hereinafter, "Article" refers to an article in the Agreement.

[3] Hereinafter collectively referred to as "Defendants." Hereinafter, Safe Air Technology referred to as "SAT."

[4] Doc. 139.

[5] Doc. 145.

[6] Doc. 156.

[7] Doc. 157.

[8] Doc. 158.

1

enforcing the Agreement.[9] For the reasons set forth below, this court GRANTS Plaintiff's Motion to Enforce the Settlement Agreement and DENIES Defendants' Motion to Interpret the Agreement.

## Factual Background

The facts of this case are somewhat complex, so to clarify what did take place, the actual background and the position of the parties is rather extensive. In December 2002, Mr. Ratcliff left the employment of Plaintiff, then formed and worked for SAT. Both SSC and SAT manufacture and sell specialized air conditioning, heating, ventilation, pressurization, and refrigeration systems to be used under extreme conditions. On June 23, 2004, Plaintiff sued Defendants alleging, *inter alia*, that Defendants had violated federal copyright law and the Lanham Act by infringing on Plaintiff's trademarks in connection with the manufacturing and sale of these specialized systems. In August 2004, Defendants filed Answers[10] to the original Complaint,[11] in which they denied virtually all of Plaintiff's allegations. On December 8, 2004, the parties began to negotiate a settlement. On April 25, 2006, they entered into the Agreement[12] and filed a joint motion to partially dismiss with this court, though this court reserved jurisdiction to enforce the terms of the Agreement.

The Agreement provides for a Technical Auditor and, if necessary, a Special Master, a

---

[9]Doc. 119.

[10]Docs. 17-18

[11]Doc. 1.

[12]The Agreement settled three separate lawsuits between the parties. *See* Art. 2.1(a). Plaintiff's original claims against Defendants included allegations of federal copyright violations under the Lanham Act for trademark infringement, false designation of origin, trade duress infringement, false and misleading advertising, unfair competition, civil relief for violation of the RICO Act, misappropriation, conversion, trespass, fraud, and breach of contract, all under the Louisiana law.

consulting attorney, and an Accounting Auditor.[13]  According to the Agreement, the Technical Auditor's role was,

> (a) to identify the first generation of a SAT product for a comparison to SSC products; and
> (b) to ascertain whether an existing or new product of SAT was "copied" from the products of SSC as they existed prior to January 1, 2003, with information in which SSC had a protectable interest.  "Protectable information" as used herein is information whose source and/or applications came from SSC.  "Copied" as used herein shall exclude any products copied or that could have been copied from another source other than SSC.

Art 4.5.

The Technical Auditor is allowed to audit up to three products (existing or new) at a time, and is allowed to continue auditing Defendants' products until all of them are audited.[14]  If Defendants did "copy" Plaintiff's products, Defendants shall immediately owe royalties of 8% of gross sales of all these "copied" products to Plaintiff.[15]  Because the parties could not mutually agree upon a Technical Auditor, they chose a Special Master,[16] who then chose James Hanneke as the Technical Auditor in April 2007.  The parties then attempted to establish a protocol setting forth the procedures to be employed by the Technical Auditor in making his report, but the Special Master had to intervene again because the parties disagreed on the correct protocol.

On October 15, 2007, the Technical Auditor finished his report on SAT's Phase I products,

---

[13] Arts. 3.1, 3.4.3.

[14] Art 4.2.

[15] Arts. 8.1, 8.4, 8.5.

[16] Mr. Stanford O. Bardwell, Jr., former U.S. District Attorney for the Middle District of Louisiana.  Although Mr. Bardwell did not meet the qualifications of Special Master (*See* Arts. 3.4.1-3.4.2.), both parties agreed to his selection.

3

finding that Defendants had "copied" Plaintiff's designs, methodology, and techniques.[17] The Technical Auditor also found that the only possible source for Defendants' designs was Plaintiff. Because the Technical Auditor found that Defendants did "copy" Plaintiff's products, Plaintiff nominated an Accounting Auditor to determine the royalties due to Plaintiff.[18] However, because Defendants have refused to help select a Accounting Auditor, no one has been selected yet.[19]

Defendants appealed the findings of the Technical Auditor to the Special Master.[20] The Special Master affirmed the findings of the Technical Auditor in his Report[21] on November 23, 2007.[22] Defendants then gave notice to Plaintiff that a "dispute" existed concerning the Agreement.[23]

---

[17]Doc. 145, Exhibit 15. Plaintiff had publically sold its original versions of these products "copied" by Defendants before January 1, 2003.

[18]Arts. 8.6-8.7.

[19]Plaintiff's nominee Mr. Henry Boudreaux was appointed by the U.S. Bankruptcy Court for the Middle District of Louisiana to serve as an accountant and examiner in a number of cases. He is a CPA and meets all of the criteria in the Agreement.

[20] "7.1   SAT shall have a limited right of appeal from the Technical Auditor's finding and conclusion of "copied" from the products of SSC under Article 6. Except in this limited circumstance, all other findings and conclusions of the Technical Auditor, Accounting Auditor and Special Master, as the case may be, shall be binding, final and enforceable...
"7.4   All appeals under this Article 7 shall be to a special master selected pursuant to Article 3." Art. 7.

[21]Doc. 130, Exhibit 2.

[22]If one party appeals the decision of the Technical Auditor to the Special Master, the prevailing party – in this case, Plaintiff – is entitled to reimbursement of its legal fees and expenses associated with the appeal. Art. 7.10. Defendants have refused to reimburse Plaintiff for these fees.

[23] Article 12.1: "With respect to any controversy, claim, counter claim, dispute, difference or misunderstanding arising out of or relating to this Agreement ... the Parties shall for a period of sixty days after either party has given notice that a Dispute exists engage in good faith discussions and negotiations in an attempt to resolve such Dispute. If, by the end of such sixty-day period, unless such period is extended by mutual agreement of the Parties, the Parties have

Defendants have refused Plaintiff's and the Technical Auditor's requests to allow the Technical Auditor to audit SAT's Phase II products.[24] Negotiations between the parties have failed, and thus these issues are presently before this court.

### Plaintiff's Argument

In Plaintiff's Complaint,[25] Plaintiff alleges that Defendants, in conjunction and conspiracy with each other and in violation of Mr. Ratcliff's signed employment contract with Plaintiff, "copied" and marketed the designs, technology, and methodology developed by Plaintiff for its product lines. This contract contained a non-disclosure and confidentiality agreement. Plaintiff points out that the original litigation existing between the parties had the potential to be much more damaging to Defendants.[26] Plaintiff claims that since it requested injunctive relief in its original complaint, if Plaintiff had won at trial, it would have put Defendants out of business with enormous monetary judgments against them.

### A. Defendant's Have Not Acted in Good Faith

Plaintiff contends that Defendants have not acted in good faith by incorrectly interpreting the unambiguous terms of the Agreement, by repeatedly delaying implementation of the Agreement to prevent the Technical Auditor from working, and by stalling payment of fees due to Plaintiff, its attorneys, the Special Master, and the Technical Auditor. Plaintiff prays that this court order

---

been unable to resolve such Dispute, then they shall submit such Dispute to the United States District Court in and for the Middle District of Louisiana, Baton Rouge Division."

[24]Defendants admit that they have sold over $1,000,000 of SAT's Phase II products.

[25]Doc. 1.

[26]See n. 12.

Defendants to comply with all terms of the Agreement, in particular to comply with the procedures to appoint an Accounting Auditor,[27] to cooperate with the Technical Auditor, to comply with Article 9.1,[28] and to pay their overdue fees.[29]

First, Plaintiff contends that Defendant delayed the progress of the Technical Auditor. Plaintiff claims that after the parties signed the Agreement, Plaintiff immediately submitted to Defendants its list of potential Technical Auditors, including Mr. Hanneke, who met all the requirements set forth in the Agreement.[30] Plaintiff claims that Defendants' refusal to consent to Mr. Hanneke's appointment required the parties to appoint a Special Master to select the Technical Auditor, and that this process took until February 2007.[31] Plaintiff avers that once the Technical Auditor determined that SAT's products were "copied" from some of SSC's products, Defendants appealed his finding for the purpose of delay. Plaintiff also asserts that Defendants violated the

---

[27]*See* Article 3.

[28]"Except as permitted through the payment of royalty, SAT, its principals, employees, and any affiliated or related companies and/or ventures shall immediately cease and desist from disclosing, communicating, divulging or in any way using, whether orally, in writing or in any other way, any of SSC's trademarks, copyrighted materials, and/or other intellectual property, trade secrets or confidential or proprietary information of SSC." Art. 9.1.

[29]As of July 1, 2008, Plaintiff's claim that the Special Master is owed $2403, and that Plaintiff's attorneys are owed $7200 plus the cost of their two most recent motions (Docs. 145, 157).

[30]*See* Art. 4.1.

[31]Plaintiff cites Article 3.5: "On or before the first business day following thirty calendar days after final execution of this Agreement, each party shall submit to the other party a list of five or fewer nominees for Technical Auditor who meet the qualifications set forth in Section 3.2.1 within ten calendar days of the audit being initiated. The list of potential auditors shall include background information such as education and employment experience."

Agreement by not notifying the Technical Auditor of SAT's new products.[32]

Second, Plaintiff believes that Defendants delayed the progress of the Special Master. Plaintiff claims that Defendants cannot appeal the Special Master's holding because the present situation is not a legitimate Article 12.1 dispute between the parties regarding an interpretation or implementation of the Agreement. Plaintiff says Defendants' appeal to the Special Master is strictly limited to the Technical Auditor's finding of "copied" products. Plaintiff also claims that in Defendants' Motion to Interpret Agreement,[33] Defendants are actually asking this court to ignore the Agreement and are attempting to reargue the legal issues involved in the settled litigation by imposing new and burdensome terms on the Agreement which would render it meaningless and to which Plaintiff would never have agreed. Plaintiff notes that even though the sixty-day negotiation period has expired, Defendants have still not submitted their claimed dispute to this court for resolution.[34]

Third, Plaintiff believes that Defendants delayed the progress of the Accounting Auditor process. Plaintiff maintains that Defendants have failed to comply with the Agreement because they never submitted their list of acceptable Accounting Auditors to determine the exact amount of royalties due to Plaintiff, despite Plaintiff's numerous demands.[35] Plaintiff also claims that

---

[32]*See* Art. 5.2.

[33]Doc. 156.

[34]Art. 12.1.

[35]Art. 3.6

Defendants have not complied with the Agreement's royalty payment protocol.[36] Plaintiff further maintains that an appointed Accounting Auditor should be determining the historical and current sales of Phase I products.[37]

Furthermore, Plaintiff believes that the Technical Auditor should continue with the audit of the Phase II product line at the present time. Plaintiff claims that Defendants' calculations show that Plaintiff is entitled to approximately $8,000 in royalties from Phase I products, but would be entitled to approximately $80,000-$90,000 of royalties from Phase II products.

**B. Defendants Misunderstand and Misrepresent the Agreement**

Next, Plaintiff maintains that Defendants misrepresent the Agreement in a number of ways. First, Plaintiff says Defendants are incorrect in asserting that the Special Master was to make a complete legal analysis to determine whether Plaintiff would have been successful on the merits had this matter gone to trial. Plaintiff avers that the Technical Auditor is not an attorney, nor is he allowed to employ an attorney. Additionally, Plaintiff notes that the Special Master is not required to consult an attorney, though he has the discretion to do so in limited circumstances.[38]

Plaintiff claims that Defendants misstate the Agreement when they talk about a "panel of

---

[36] Art. 8. Because Plaintiff believes the Technical Auditor's report concerning Phase I products is now final and unappealable, Plaintiff avers that Article 8 is now in effect and that Plaintiff is entitled to monthly royalties and accounting from those products. Article 8.5.

[37] Article 3.6: "Within ten (10) business days following an event as set forth herein requiring the selection of an Accounting Auditor and/or a Special Master, each party shall submit to the other party a list of five or fewer nominees for Accounting Auditor and/or Special Master, as necessary, who will meet the qualifications set forth in Section 3.3 of 3.4, respectively."

[38] Plaintiff cites Article 9 to claim that the Special Master may consult an attorney only if Plaintiff seeks injunctive relief. However, Articles 9 and 3.4.3, considered together, do not make Plaintiff's claim necessarily true. Rather, Article 3.4.3 states that "[t]he Special Master shall not consult an attorney on none [sic] legal issues."

8

experts" that determine whether Defendants had violated the law. Plaintiff emphasizes that only the Technical Auditor is mandated in the Agreement, and that his determinations are factual, not legal.[39] Plaintiff urges this court that the Agreement does not provide that Plaintiff's products sold to the public on or before January 1, 2003 be excluded from the list of possible copied products, claiming that Plaintiff would have never agreed to such a valueless agreement.

Plaintiff maintains that the Agreement clearly sets forth a specific definition for the terms "protectable interest" and "protectable information," because those terms are interchangeable terms under the Agreement, both meaning "information whose source and/or application came from SSC."[40] Plaintiff maintains that whether that information has been copyrighted or patented, and whether the product had been sold to the public, is irrelevant to this litigation. Instead, Plaintiff maintains that the only real question is whether the Technical Auditor believes that Plaintiff is the "source" of the information. Therefore, Plaintiff maintains that "copied" does not exclude products on the market before January 1, 2003.

Plaintiff further maintains that Defendants' emphasis on trade secrets, as set forth in the Louisiana Uniform Trade Secrets Act,[41] are inapplicable under the Agreement because that Act is mentioned nowhere in the Agreement and because the Agreement is the binding law between the parties.

---

[39] *See* Arts. 4-6, especially Art. 4.5.

[40] Art. 4.5(b).

[41] LA. REV. STAT.15:1431, *et. seq.*

## Defendants' Argument[42]

### A. Defendants Acted in Good Faith

Defendants maintain that Plaintiff's accusations of Defendants' delays are not supported by evidence. Defendants claim that their members or representatives attended all meetings and worked with Plaintiff's previous counsel to implement the Agreement. Defendants maintain that the parties are still negotiating an understanding of terms of the Agreement and the appropriate protocol of Phase II audits. Defendants do not think the Technical Auditor should begin Phase II audits until these issues are resolved. Defendants aver that they invoked Article 12.1 of the Agreement to resolve these issues without court intervention.[43] Defendants further claim that Plaintiff has failed to follow the necessary steps of the Agreement[44] before invoking court involvement in selecting an Accounting Auditor, and Plaintiff's request for an Accounting Auditor is premature since an Accounting Auditor is not allowed until after a year-end reconciliation period.[45]

### B. Plaintiff's Do Not Consider Laws Applicable to the Agreement

Defendants aver that if "copied" be understood stripped of any of its legal glossing, Plaintiff

---

[42]Originally, Defendants wanted Plaintiff's claims dismissed as premature, contending that Plaintiff brought it's Motion to enforce the Agreement before the mandatory negotiation periods set forth in the Agreement had expired. Doc. 139. However, this point is now moot because the applicable negotiations periods have expired.

[43] Defendants contend that the Agreement required the parties to appoint a "panel of experts," (Doc. 156) consisting of a Technical Auditor, a Special Master, a consulting attorney, and an Accounting Auditor. Defendants claim that this panel would determine whether Defendants had violated the law by copying Plaintiff's products – as they existed prior to January 1, 2003 – in which Plaintiff had a "protectable interest."

[44]Set forth in Articles 3.7.7 and 12.1.

[45]Arts. 8.6-8.7.

would be given an advantage to which Defendants would not have capitulated when entering into the Agreement.[46] Defendants have taken the position that the Technical Auditor and Special Master have not properly interpreted or complied with the terms of the Agreement. Defendants say that although the Technical Auditor determined that Defendants "copied" some of Plaintiff's products, he did not say whether they were "copied" with information in which Plaintiff had a protectable interest.[47]

Defendants claim that the Special Master must overrule the Technical Auditor, because the Technical Auditor found that Defendants' products were made with "protectable information," whereas the Technical Auditor's task was to determine if the copied products were made with information in which Plaintiff had a "protectable interest," not "protectable information."[48] Defendants contend that information that the Technical Auditor alleged to be "protectable" was readily ascertainable by the public prior to January 1, 2003, and therefore cannot be protectable because publically available information is not trade secret information.[49] Defendants maintain that

---

[46]Defendants also claim that "copied" is not defined in the Agreement other than to exclude products "copied" or that could have been "copied" from another source than Plaintiff.

[47]Defendants contend that the Technical Auditor was to engage in a three step process: (1.) to determine whether SAT's product contains "protectable information;" (2.) to determine if the "protectable information" was "copied" from SSC's product; (3.) to determine if the products were copied with information in which Plaintiff had a "protectable interest." Defendants maintain that this third step was not performed in accordance state or federal law.

[48]Defendants declare that "protectable interest" is not defined in the Agreement.

[49]A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." LA. REV. STAT. 51:1431.

Plaintiff must prove the existence of a trade secret, misappropriation of that trade secret by Defendants, and actual loss caused by the misappropriation in order to recover damages under the Louisiana Uniform Trade Secrets Act.[50]

Defendants request this court to order the Special Master to re-evaluate his decision in light of the law and legal issues that he did not consider when making his initial determination.[51] Defendants maintain that the Special Master failed to fulfill his duties because he relied only on the word "copied"[52] when making his initial determination instead of considering the Agreement as a whole, and in light of intellectual property and trade secret law. Defendants further declare that the

---

Defendants maintain that three questions must be asked in every trade secret case. First, does a legally protectable trade secret exist in fact? Second, did an express or implied contractual or confidential relationship exist between parties which obligated the party receiving secret information not to use or disclose it? Third, can the allegedly aggrieved party prove that the party receiving secret information wrongfully breached its duty of trust or confidence by disclosing or using information to injure the allegedly aggrieved party? These questions come from *Pontchartrain Medical Labs, Inc. V. Roche Biomedical Laboratories, Inc.*, 677 So. 2d 1086, 1090 (La.App. 1st Cir. 1996).

[50]*Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997). *See also,* LA. REV. STAT. 51:1431, Comment (e): "The language 'not being generally known to and not being readily ascertainable by proper means by other persons' does not require that information be generally known to the public for trade secret rights to be lost. If the principle person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.
Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of the product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person can have a trade secret in the information obtained from reverse engineering."

[51]Defendants also note that the Special Master could have, but did not, consult with an attorney who specialized in intellectual property. Article 3.4.3.

[52]Art. 4.5.

Special Master incorrectly concluded that "protectable interest" and "protectable information" were synonymous. Defendants aver that the Agreement requires the Special Master's report to contain findings and conclusions as to each disputed use of Plaintiff's "trademarks, copyrighted materials and/or other intellectual property, trade secrets or confidential or proprietary information."[53]

### Legal Analysis

Neither party denies the enforceability or validity of the Agreement. However, Defendants have acted in bad faith to consistently delay implementing the Agreement. Plaintiff correctly contends that the Agreement constitutes the binding law between these parties. The parties willingly drafted and entered into the Agreement, and so they must now adhere to its terms.

This court is not convinced by Defendants' assertion that the Technical Auditor and Special Master were to take into account the entire body of intellectual property and trade secret law, because such laws were not clearly specified in the Agreement. Nor is this court is convinced by Defendants' assertion that "protectable interest" and "protectable information" are distinct terms. Article 4.5 uses the two terms interchangeably, and Defendants are grasping at straws to delay paying the fees that they inevitably owe under the Agreement.

The Special Master, a reputable attorney himself, did not have to consult an intellectual property attorney before deciding an appeal from the Technical Auditor's findings. The Agreement unambiguously states that the Special Master's decision is final, and thus Defendants cannot appeal his decision to this court.[54] Further, Defendants are incorrect in not agreeing to appoint an

---

[53] Art. 9.2.

[54] "SAT shall have a limited right of appeal from the Technical Auditor's finding and conclusions of 'copy' from the products of SSC under Article 6. Except in this limited circumstance, all other findings and conclusions of the Technical Auditor, accounting auditor and

13

Accounting Auditor before a year-end reconciliation period has elapsed. The first reconciliation period was from January 1, 2003, to December 31, 2005,[55] and so an Accounting Auditor should have already been appointed by the parties.

Accordingly this court GRANTS Plaintiff's Motion to Enforce the Settlement Agreement and DENIES Defendants' Motion to Interpret the Agreement. This court orders Defendants specifically to comply with the procedures to appoint an Accounting Auditor, to cooperate with the Technical Auditor, to comply with Article 9.1, and to pay the fees due to the Technical Auditor, the Special Master, and Plaintiff's attorneys.

Baton Rouge, Louisiana, July 16th, 2008.

_____
JAMES J. BRADY
UNITED STATES DISTRICT JUDGE

---

Special Master as the case may be shall be final, binding and enforceable." Art. 7.1.

[55] Art. 8.6